## DISTRICT COURT OF THE VIRGIN ISLANDS
## DIVISION OF ST. CROIX

| | | |
|---|---|---|
| **LIVE OAK BANKING COMPANY,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | **Civil Action No. 2016-0070** |
| | ) | |
| **PRINCESS MILL PROPERTIES, LLC.,** | ) | |
| **PEYTON BOSWELL and STACIA A.** | ) | |
| **BOSWELL a/k/a STACIA A. JUNG,** | ) | |
| | ) | |
| **Defendants.** | ) | |
| | ) | |

**Appearances:**
**Warren B. Cole, Esq.,**
St. Croix, U.S.V.I.
    *For Plaintiff*

**Pamela L. Colon, Esq.**
St. Croix, U.S.V.I.
**Thomas Donnelly, Esq.,**
Doylestown, PA
    *For Defendant Peyton Boswell*

**Stacia A. Boswell a/k/a Stacia A. Jung**
St. Croix, U.S.V.I.
    *Pro se*

## <u>MEMORANDUM OPINION</u>

**Lewis, District Judge**

THIS MATTER comes before the Court on the "Motion to Dismiss, or in the Alternative, for More Definite Statement" (Dkt. No. 24) filed by Defendant Peyton Boswell ("Boswell"). Boswell's Motion challenges the adequacy of the Complaint (Dkt. No. 1) filed by Live Oak Banking Company ("Plaintiff") against Princess Mill Properties LLC ("Princess Mill") for default on a Promissory Note and Mortgage, and against Boswell and Stacia Boswell a/k/a Stacia Jung as the Note's guarantors. *Id.* at ¶¶ 6-8.

The Court notes that significant changes have occurred in this case recently as a result of the conclusion of bankruptcy proceedings involving Defendant Princess Mill.[1] However, because Defendant Boswell's Motion challenges, *inter alia*, the validity of the documents underlying this action, the Court will address the Motion on the merits. For the reasons discussed below, the Court will treat Boswell's Motion to Dismiss as a Motion for Summary Judgment and will deny the same.

## I.     BACKGROUND

Plaintiff filed this action to collect on a Promissory Note and to foreclose on a Mortgage relating to real estate located on St. Croix, U.S. Virgin Islands. (Dkt. No. 1 at ¶¶ 6-9). In its Complaint, Plaintiff alleges that Princess Mill, a Virgin Islands limited liability company, executed a Promissory Note ("Note") on July 8, 2008, in the amount of $1,800,000.00 plus interest at the rate of the Wall Street Journal Prime Rate plus 0.50 percent. *Id.* at ¶ 6. Plaintiff also asserts that it obtained unconditional guarantor agreements assuring payment of the Princess Mill Note from Boswell and Stacia Boswell a/k/a Stacia Jung (collectively "the Boswells"). *Id.* at ¶¶ 7-8. Plaintiff additionally contends that to further ensure payment of the Note, Princess Mill executed and delivered to Plaintiff on the same date a Mortgage ("Mortgage") encumbering real property described as:

> Plot No. 218 (approximately 0.660 U.S. Acres) and Plot No. 220 (approximately 1.637 U.S. Acres), both of Estate La Grande Princesse, Company Quarter, St. Croix, U.S. Virgin Islands, as more fully shown and described on OLG Drawing No. 5897 dated October 22, 2007

---

[1] Princess Mill filed for bankruptcy protection after Plaintiff had filed a Motion for Summary Judgment in this case. (Dkt. No. 49). *See* 1:18-bk-10001 (Bankr. D.V.I.) A recent status report filed by Plaintiff, in response to this Court's Order for the same (Dkt. No. 64), reveals that the bankruptcy case concluded in October 2020. (Dkt. No. 65).

(the "Property"), and a Security Agreement collateralizing all furniture, fixtures, equipment, and tangible and intangible property belonging to Princess Mill and used or associated with the Property. *Id.* at ¶¶ 9, 11. Princess Mill also executed a Rent Assignment Agreement for the mortgaged Property in favor of Plaintiff. *Id.* at ¶ 10. Plaintiff and Princess Mill executed four modifications of the Note between 2010 and 2012. *Id.* at 12-15. Copies of the loan documents and modifications are attached to the Complaint—all allegedly executed by Princess Mill's members, the Boswells. (Dkt. Nos. 1-5 to 1-14).

Plaintiff further alleges that Princess Mill is in default on the Note, as modified, and owes Plaintiff a debt exceeding $2,000,000.00, which includes unpaid principal, accrued interest, and late charges. *Id.* at 16. Plaintiff requests that the Court issue an Order finding that:  Defendants are jointly and severally liable on the outstanding Note; Plaintiff holds a first priority lien on the Property; the Property is to be seized and sold to satisfy the outstanding debt; Defendants are jointly and severally liable for any deficiency judgment; and Plaintiff is entitled to an award of attorneys' fees and costs. *Id.* at 4.

In lieu of filing an Answer, Defendant Boswell filed the instant Motion to Dismiss, or in the Alternative, for More Definite Statement. (Dkt. No. 24). Boswell contends that Plaintiff's Complaint fails to state a claim in that insufficient facts are pleaded to establish that Plaintiff has standing to enforce the Note. According to Boswell, this is because: (1) Plaintiff fails to allege that it is the current holder of the Note; (2) Plaintiff fails to allege facts establishing that it was authorized to issue or enforce the Note under Virgin Islands law because it was not licensed to do business here; (3) Plaintiff fails to allege that it complied with conditions precedent to enforcing the Unconditional Guarantee Boswell allegedly signed; and (4) Plaintiff failed to name an indispensable party—the Small Business Administration ("SBA")—in the Complaint. *Id.* at 5-13.

With his Motion to Dismiss, Boswell attached various exhibits. In addition to a copy of the Complaint and its attachments, Boswell included an Affidavit from Monique Titre, an employee of Boswell's attorney, averring that the Virgin Islands Lt. Governor's Office, the Banking Commission, and the Licensing and Consumer Affairs Board confirmed that Plaintiff was not registered to do business in the Territory. (Dkt. No. 24-2). Boswell also relies on a copy of a 2015 Securities and Exchange Commission ("SEC") form from Plaintiff's parent corporation, Live Oak Bancshares, purporting to reflect that Live Oak was not incorporated until December 2008. (Dkt. Nos. 24 at 8; 24-3). With its Response to the Motion, Plaintiff attached an Affidavit from its representative, its Articles of Incorporation, and other documents. (Dkt. Nos. 27-1 through 27-3). Boswell also filed a Reply referencing a letter bearing the letterhead of the Office of the Lt. Governor, Division of Banking, Insurance and Financial Regulation, which states that, as of February 2017, Plaintiff was not licensed or registered with the Division. (Dkt. Nos. 26-1, 34).[2]

## II.    APPLICABLE LEGAL PRINCIPLES

### A.    Motion to Dismiss

Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, a party may seek dismissal of a complaint for failure to state a claim upon which relief can be granted. In evaluating such a motion, the court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Fleisher v. Standard Ins. Co.*, 679 F.3d 116, 120 (3d Cir. 2012) (internal citations omitted). To withstand a motion to dismiss, a "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its

---

[2] The letter—identified as Exhibit 5—was submitted separately as a "Notice of Filing" after the Motion to Dismiss was filed, but before Plaintiff's Reply was submitted. (Dkt. No. 26).

face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556).

In the Third Circuit, to determine the sufficiency of a complaint under *Twombly* and *Iqbal*, the court must: (1) "tak[e] note of the elements [the] plaintiff must plead to state a claim;" (2) "identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth;" and (3) "assume [the] veracity [of well-pleaded factual allegations] and then determine whether they plausibly give rise to an entitlement to relief." *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016) (quotations and citations omitted).

In considering a Rule 12(b)(6) motion, the court must consider only "the complaint, exhibits attached to the Complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010); *see also United States f/u/b/o Tip Top Constr. Corp. v. CMGC Building Corp.*, No. 1:2017-cv-0026, 2019 WL 3716469, at *2 (D.V.I. Aug. 7, 2019) (same). If documents, affidavits, or other matters outside the pleadings are presented to the court, "the motion must be treated as one for summary judgment under Rule 56 [of the Federal Rules of Civil Procedure]." FED. R. CIV. P. 12(d); *Bruni v. City of Pittsburgh*, 824 F.3d 353, 360 (3d Cir. 2016).

### B.    Motion for Summary Judgment

To prevail on a motion for summary judgment, a movant must show that there is "no genuine dispute as to any material fact," and that, based on the uncontroverted facts, it is "entitled

to judgment as a matter of law." FED. R. CIV. P. 56(a); *see also Goldenstein v. Repossessors Inc.*, 815 F.3d 142, 146 (3d Cir. 2016) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). A genuine issue of material fact exists when the factfinder, viewing the record evidence, could rationally find in favor of the non-moving party. *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986).

In reviewing a summary judgment motion, the court is required to view all facts "in the light most favorable to the non-moving party, who is 'entitled to every reasonable inference that can be drawn from the record.'" *Seamans v. Temple Univ.*, 744 F.3d 853, 859 (3d Cir. 2014) (citations omitted). In addition, "at the summary judgment stage, a court may not weigh the evidence or make credibility determinations." *Anderson v. Warden of Berks County Prison*, 602 F. App'x. 892, 895 (3d Cir. 2015) (internal citations omitted).

### C.    Motion for More Definite Statement

As an alternative to his request for dismissal, Boswell requests that the Court order Plaintiff to provide a more definite statement of its claims under Rule 12(e). In accordance with that Rule:

> A party may move for a more definite statement of a pleading to which a responsive pleading is allowed but *which is so vague or ambiguous* that the party cannot reasonably prepare a response. The motion must be made before filing a responsive pleading and must point out the defects complained of and the details desired.

FED. R. CIV. P. 12(e) (emphasis added). A Rule 12(e) motion "is not a substitute for the discovery process" and such motions are not favored. *Carson v. Tucker*, No. 5:20-cv-0399, 2020 WL 1953655, at *3 (E.D. Pa. Apr. 23, 2020) (citations omitted). Orders requiring a more definite statement are typically only issued where pleadings are "unintelligible or if it is virtually impossible for the opposing party to craft a responsive pleading." *Id.* at *3 (citing *Schaedler v. Reading Eagle Publ'n*, 370 F.2d 795, 798 (3d Cir. 1966)). Whether a Rule 12(e) motion should be

granted is a question to be decided within the court's broad discretion. *Bigler Boyz Enviro, Inc. v. Clean Fuels of Indiana, Inc.*, No. 3:19-cv-170, 2020 WL 1929424, at *3 (W.D. Pa. Apr. 21, 2020).

### D.      Indispensable Parties

Boswell also seeks dismissal of the Complaint under FED. R. CIV. P. 12(b)(7) by asserting that Plaintiff has failed to join an indispensable party under Rule 19, namely the Small Business Administration ("SBA").

Rule 19(a) provides:

> A person who is subject to service of process and whose joinder will not deprive the court of jurisdiction over the subject matter of the action *must be joined* as a party in the action if (1) in the person's absence, complete relief cannot be accorded among those already parties, *or* (2) the person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may: (i) as a practical matter impair or impede the person's ability to protect the interest or (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of the claimed interest.

FED. R. CIV. P. 19(a) (emphasis added). Because Rule 19(a) is stated in the disjunctive, the Third Circuit has held that if either subsection is satisfied, the absent party is a "necessary" party that should be joined if possible. *Koppers Co., Inc. v. Aetna Cas. & Sur. Co.*, 158 F.3d 170, 175 (3d Cir. 1998). The burden of demonstrating that an absent party must be joined under Rule 19(a) falls on the party moving for dismissal. *Millner v. Bayada Nurses, Inc.*, Civ. No. 05-3164(RBK), 2006 WL 231993, at *2 (D.N.J. Jan. 30, 2006) (citing *John Hancock Prop. & Cas. Co. v. Hanover Ins. Co.*, 859 F. Supp. 165, 168 (E.D. Pa. 1994)).

Under Rule 19(a)(1), the "inquiry is limited to whether the district court can grant complete relief to the persons already parties to the action." *Wheaton v. Diversified Energy, LLC*, 215 F.R.D. 487, 490 (E.D. Pa. 2003) (citing *Janney Montgomery Scott v. Shepard Niles,* 11 F.3d 399, 405 (3d Cir. 1993) (not all parties to a contract are necessary under Rule 19(a) because only one potential

defendant is necessary when all potential defendants are jointly and severally liable under the applicable law)). Rule 19(a)(2)(i) requires a court to consider the effect that resolution may have on the absent party, and whether its absence will impair or impede its ability to protect its interests. *Shetter v. Amerada Hess Corp.*, 14 F.3d 934, 940 (3d Cir. 1994). Rule 19(a)(2)(ii) is concerned with the effect that the party's absence might have on an existing party in light of multiple or inconsistent obligations an existing party may be subjected to as a result of the party's absence. *See Downs v. Andrews*, 639 F. App'x 816, 822 (3d Cir. 2016) (focus on subjecting an existing party to a substantial risk of incurring inconsistent obligations).

"When making a Rule 19 determination, the Court may consider evidence outside the pleadings." *Bus Air, LLC v. Woods*, Civ. No. 19-1435-RGA-CJB, 2019 WL 6329046, at *19 (D. Del. Nov. 26, 2019). If complete relief can be granted to the current parties, the non-named party is not necessary. *See, e.g.*, *Janney Montgomery Scott, Inc.*, 11 F.3d at 407 (where liability is joint and several among parties, complete relief may be granted even if only one of the co-obligors is named); *General Ins. Co. of America v. Walter E. Campbell Co., Inc.*, No. WMN-12-3307, 2013 WL 2637397, at *3 (D. Md. June 11, 2013) (state insurance guarantee corporation was not a necessary party under Rule 19(a) due to the limited potential for prejudice to that corporation and the current parties).

## III.   DISCUSSION

Before addressing the merits, the Court must determine whether Boswell's Motion to Dismiss should be converted to a Motion for Summary Judgment because of his reliance on documents outside of the pleadings. In his Reply, Boswell argues that such a conversion is unnecessary because the exhibits attached to his Motion qualify as matters of public record which may be judicially noticed or are otherwise acceptable under Rule 12(b)(6). (Dkt. No. 34 at 2-3).

Upon review of the attachments to Boswell's Motion, the Court concludes that—with the exception of Plaintiff's Complaint and the documents attached thereto—the other documents are not materials relied on in the Complaint.[3] Among the attachments on which Boswell relies is an affidavit from Monique Titre regarding conversations she had with government agencies concerning whether Plaintiff was registered to do business in the Virgin Islands. (Dkt. No. 24-2). Generally, affidavits not included with the complaint require the court to convert a pending motion to dismiss to a motion for summary judgment. *Wang v. Zhang*, No. 19-21344 (FLW), 2020 WL 9347655, *2 (D.N.J. Aug. 12, 2020). In addition, Boswell relies on Exhibit 5, a letter bearing the letterhead of the Office of the Lt. Governor regarding Plaintiff's registration status to do business as a bank or mortgage lender. (Dkt. No. 26-1). While certain government records may be judicially noticed, such public records are usually limited to documents maintained by government agencies in their regular course of business, judicial opinions, and agency letter opinions. *See, e.g.*, *Southern Cross Overseas Agencies, Inc. v. Wah Kwong Shipping Group Ltd*, 181 F.3d 410, 426-27 (3d Cir. 1999) (judicial notice of a court's opinion is permitted but not for the truth of the facts recited therein); *City of Pittsburgh v. West Penn Power Co.*, 147 F.3d 256, 259 (3d Cir. 1998) (judicial notice permitted as to public utility regulatory proceedings "at the heart" of the current dispute).

Boswell cites to no authority—nor is the Court aware of any—that an affidavit setting out information purportedly received from a government agency through a telephone conversation or

---

[3] A document "integral to or explicitly relied upon" in the complaint may be considered with a motion to dismiss because the plaintiff has relied upon the document in framing the complaint. *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997). Even if a document is "integral"' to the complaint, however, it must be clear that no dispute exists regarding the authenticity or accuracy of the document. *See Eureka Resources, LLC v. Howden Roots LLC*, No. 4:20-cv-02222, 2021 WL 3545068, at *2 (M.D. Pa. Aug. 11, 2021). By contrast, an outside document cannot be considered with a Rule 12(b)(6) motion if it is only integral to the Defendants' attack on the Plaintiff's claims. *Hartig Drug Co. Inc. v. Senju Pharm. Co. Ltd.*, 836 F.3d 261, 274 (3d Cir. 2016).

in a private letter constitutes a "public record." (Dkt. No. 34 at 2-3). *See Pension Ben. Guar. Corp. v. White Consol. Industries, Inc.*, 998 F.2d 1192, 1197 (3d Cir. 1993) (written correspondence between government agency and party are not "public records" for judicial notice purposes even though the correspondence could be subject to disclosure under the Freedom of Information Act); *MDB v. Punxsutawney Christian School*, 386 F. Supp. 3d 565, 580 (W.D. Pa. 2019) (letter from the Office of Civil Rights to unknown recipient, and an email exchange between that individual and OCR officials are not public records that may be considered under Rule 12(b)(6)); *Perkins v. United States Virgin Islands*, No. 3:2017-cv-025, 2018 WL 847766, at *2 (D.V.I. Feb. 12, 2018) (affidavit from government describing telephone conversation with Plaintiff's attorney is extrinsic evidence under Fed. R. Civ. P. 12(d)). Thus, judicial notice of such documents in this case would be inappropriate.[4]

Because Boswell's arguments repeatedly rely on information from documents which are not subject to judicial notice, the Motion must be considered as a Motion for Summary Judgment.

---

[4] Certain cases on which Boswell relies—when arguing that it is unnecessary to convert his motion to dismiss to a summary judgment motion—only state the general Rule 12(b)(6) principles pertaining to exhibits outside the pleadings. *See, e.g., Saterdalen v. Spencer*, 725 F.3d 838, 841 (8th Cir. 2013) (under Rule 12(b)(6), court may consider some public records or materials "necessarily embraced by the pleadings"); *Free Speech v. Federal Election Comm'n*, 720 F.3d 788, 792 (10th Cir. 2013) (court may consider only the complaint, exhibits attached thereto and incorporated by reference in the Complaint); *Young v. Wells Fargo Bank, N.A.*, 717 F.3d 224, 231 (1st Cir. 2013) (court may consider documents incorporated by reference in the complaint); *Clatterbuck v. City of Charlottesville*, 708 F.3d 549, 557-58 (4th Cir. 2013) (information set out in legislative record may be subject to judicial notice). Another case Boswell cites involves the taking of judicial notice of prior court records when determining a res judicata defense. *See, e.g., Newman v. Krintzman*, 723 F. 3d 308, 309 (1st Cir. 2013); *see also Stolarick v. Keycorp*, No. 17-cv-0593, 2017 WL 4642312, at *1 (E.D. Pa. Oct. 17, 2017) (a court may take judicial notice of a prior court proceeding between the parties when evaluating a res judicata defense raised in a Rule 12(b)(6) motion). None of these cases specifically discuss the type of "outside documents" on which Boswell relies nor do they hold that such documents are proper for consideration with a Rule 12(b)(6) motion. Accordingly, the cases cited by Boswell do not aid his cause.

Thus, the Court will consider matters outside the pleading submitted by both parties. *See Bruni*, 824 F.3d at 360. Normally, when a Rule 12(b)(6) motion is converted to a summary judgment motion, the plaintiff must be given a reasonable opportunity to present additional evidence as provided under FED. R. CIV. P. 12(d). *Bruni*, 824 F.3d at 361. However, because Plaintiff has responded as if Boswell's Motion was one for summary judgment and Boswell has filed a Reply thereto, the Court does not require additional responses.[5]

### A.      Holder/Owner Status

As part of its multi-prong attack on Plaintiff's Complaint, Boswell asserts that the Complaint must be dismissed because Plaintiff fails to explicitly allege that it is the current holder and owner of the original Note, and therefore cannot establish that it possesses standing to enforce the same. (Dkt. No. 24 at 2, 6-7).

Under Virgin Islands law, to be entitled to summary judgment in a debt and foreclosure action, the plaintiff must prove three elements: (1) the debtor executed a promissory note and mortgage; (2) the debtor is in default under the terms of the note and mortgage; and (3) the lender is authorized to enforce the Note and Mortgage. *Brouillard v. DLJ Mortg. Capital, Inc.*, 63 V.I. 788, 793 (V.I. 2015); *see also Anthony v. FirstBank Virgin Islands*, 58 V.I. 224, 232 (V.I. 2013). A Note secured by a mortgage is a negotiable instrument under Article 3 of the Uniform Commercial Code ("U.C.C."), and the U.C.C. requires that the party seeking to enforce a negotiable instrument have physical possession of the original instrument. *See* 11A V.I.C. § 3-301; *see also Wells Fargo Bank, N.A. v. MMDG L.P.*, 354 F. Supp. 3d 671, 677 (W.D. Pa. 2018).

---

[5] The Court recognizes that this Motion was filed prior to any significant discovery. Accordingly, the Court's resolution of these issues will be *without prejudice* to any future filings.

Boswell argues that Plaintiff cannot meet the third element because it does not allege that it is the "holder" of the Note. (Dkt. No. 24 at 2, 6-7). Under summary judgment standards, however, Boswell's Motion can be granted only if is undisputed that Plaintiff does not possess the Note. *Ingersoll-Rand Fin. Corp. v. Anderson*, 921 F.2d 497, 502 (3d Cir. 1990).

In response, Plaintiff has presented the Declaration of Scott Robbins. (Dkt. No. 27-1). Robbins avers that he is Plaintiff's "Relationship Manager" for the Princess Mill loan and that he has personal knowledge of Plaintiff's records relating to this transaction. Robbins avers that Plaintiff is the owner and had possession of the Note and Mortgage at the time the action was filed and at the time of his Declaration. (Dkt. No. 27-1 at ¶¶ 10-11). Notwithstanding any potential deficiencies of the Complaint, in the absence of undisputed evidence to the contrary, Plaintiff presented sufficient evidence to create a genuine issue of material fact as to its status as the holder of the Note. Accordingly, summary judgment is not appropriate on this ground.

**B.     Authority to Issue Loans and Mortgages**

In his second challenge, Boswell asserts that Plaintiff's claims fail because Plaintiff is not authorized to do business in the U.S. Virgin Islands. Boswell's arguments are based on various local statutes defining the requirements for a bank or mortgage lender to do business in the Virgin Islands. Boswell also asserts that Plaintiff cannot prove that it has paid foreign corporation taxes, which Boswell alleges is a prerequisite for Plaintiff to conduct business in the Virgin Islands. Because of these statutes, Boswell argues that (1) Plaintiff lacks standing to pursue its claims; and (2) Plaintiff's Note, Guarantees and Mortgage are illegal. (Dkt. No. 24 at 5-6, 8-9, 12).

**1.     Mortgage Lender Statutes**

Boswell argues that Plaintiff has been operating illegally in the Virgin Islands under local mortgage lender statutes. Specifically, Boswell asserts that Plaintiff cannot show that it is licensed

as a mortgage lender or broker under 9 V.I.C. §§ 361 *et seq.* and its claims against him must therefore be dismissed. He relies on statutory provisions that require any party engaging in business as a "mortgage lender" or "mortgage broker" to obtain a license from the Banking Board. 9 V.I.C. § 363(a). Plaintiff responds that the transaction at issue involves a non-residential mortgage and the statutes Boswell cites are not applicable to its operations. (Dkt. No. 27 at 8).

While Boswell cites to 9 V.I.C. § 363(a), he provides no legal analysis to establish that the statute applies to Plaintiff. (Dkt. No. 24 at 5-6, 8-9). Indeed, Boswell's argument ignores the plain language of the statute upon which he relies. As the "definitions" section makes clear, a "mortgage loan" is limited to extensions of credit which are secured "in whole or in part, by any interest in *residential* real property" in the Territory. 9 V.I.C. § 361(12) (emphasis added). In addition, a "borrower" is defined as a person seeking "a first or subordinate mortgage [for a] . . . home to be occupied by the borrower *as the borrower's primary residence*." 9 V.I.C. § 361(2) (emphasis added). Finally, the statute specifically excludes from the term "residential real property" any real property held "primarily for rental, investment, or the generation of income through any *commercial or industrial enterprise*." 9 V.I.C. § 362(16) (emphasis added).

In this case, Boswell does not assert that the encumbered Property is residential property of Princess Mill or its guarantors. It is undisputed that the Property is owned by a Virgin Islands limited liability corporation, Princess Mill. Indeed, Princess Mill's assignment of its interest in leases and rents from the mortgaged property reflects that the real property is not residential but is used for commercial or investment purposes. (Dkt. No. 1-9).[6] Because there is some evidence that Plaintiff's loan is a commercial loan not involving residential property, Boswell has failed to

---

[6] For these same reasons, Boswell's passing argument that the Security Agreement executed by Princess Mill is invalid under 9 V.I.C. § 374(a) fails as well. (Dkt. No. 24 at 12).

establish as a matter of law that Plaintiff's actions constitute acting as a "mortgage lender" or "mortgage broker" under the cited Virgin Islands statute, or that the validity or enforceability of the Note, Mortgage, or Guaranty agreements would be affected by the fact that the Banking Board may not have issued a mortgage lender or broker license to Plaintiff.

Finally, it must be noted that 9 V.I.C. § 362(1), exempts from mortgage lender registration "any bank" incorporated or chartered "under the laws . . . of any state or territory of the United States" that is "subject to the general supervision or regulation of, or subject to audit or examination by, a regulatory body or agency of the, [sic] any state or territory of the United States, *or* the United States Virgin Islands." *Id.* (emphasis added). (Dkt. No. 27 at 8-9). Plaintiff alleges in its Complaint that it is a banking corporation organized and existing under North Carolina law. (Dkt. No. 1 at ¶ 2). This is also reflected in Plaintiff's parent corporation's SEC filings attached to Boswell's Motion. (Dkt. No. 24-3 at 3).[7] While Plaintiff challenges whether Live Oak was properly incorporated in North Carolina at the time the original Note and Mortgage were executed (Dkt. No. 24 at 8), the Declaration of Scott Robbins and its attachments reflect that Live Oak Bank was incorporated under North Carolina law on February 25, 2008, months before the Note and Mortgage were executed. (Dkt. Nos., 1-5; 1-6; 1-7). Moreover, Live Oak has presented evidence that it is overseen by the Federal Deposit Insurance Corporation ("FDIC") (Dkt. No. 27-3).[8]

---

[7] The Court takes judicial notice that since before 2001, the State of North Carolina has had a Commissioner of Banks empowered to regulate North Carolina banks' capitalization, investment actions, reserve fund requirements, and other operations. *See* N.C. GEN. STAT. § 53-1 *et seq.* (repealed 2012). North Carolina modernized and recodified its statutes to regulate a variety of financial services effective October 1, 2012 and the State's banking statutes are now codified at N.C. GEN. STAT. §53C-1-1 *et. seq. See* E. Knox Proctor V & Todd H. Eveson, *Sweeping Away the Cobwebs: North Carolina's Bank Law Modernization Act*, 17 N. C. BANKING INST. 29 (March 2013).

[8] Robbins' Declaration supports Plaintiff's Articles of Incorporation that purport to include a file stamp by the North Carolina Secretary of State dated February 25, 2008, and a separate document

Based on the evidence presently before the Court, Boswell's claim that he is entitled to summary judgment because Plaintiff was obligated to be licensed as a mortgage lender under 9 V.I.C. § 361 *et seq*. must fail. The facts presented indicate that Boswell cannot show, as a matter of law, that these statutory provisions apply to Plaintiff or to this transaction. For these reasons, Boswell is not entitled to summary judgment on this issue.

### 2.    Foreign Corporation Tax Statutes

Boswell also argues that as a foreign corporation, Plaintiff is required to establish that it has complied with the Corporations Franchise Tax Act (CFTA), 13 V.I.C. §§ 530 *et seq*. Boswell specifically cites to 13 V.I.C. § 531(a), which requires "every foreign corporation *qualified to do or doing business* in the Territory" to pay a franchise tax to the Virgin Islands government. 13 V.I.C. § 531(a) (emphasis added). (Dkt. Nos. 24 at 5-6, 8-9; 34 at 4-5). In addition, a foreign corporation is "deemed to be doing business" in the Virgin Islands under CFTA "if it maintains an office" here. 13 V.I.C. § 530(b). A corporation that fails to pay franchise taxes may not commence or maintain any action in a Virgin Islands court. *See* 13 V.I.C. § 533(a); *DLJ Mortgage Capital, Inc. v. Sheridan*, No. 3:2016-cv-085, 2018 WL 9986725, at *1 (D.V.I. May 1, 2018).[9]

Based upon the plain language of 13 V.I.C. § 530(b) and § 531(a), companies are subject to CFTA requirements if they are "qualified to do business," "deemed to be doing business," or otherwise "doing business" in the Virgin Islands. The Court must, therefore, determine whether Plaintiff fits into any of these three categories within the meaning of CFTA.

---

purporting to show that Plaintiff has been actively insured by the FDIC since May 2008. (Dkt. No. 27-2 at 4; 27-3).

[9] Boswell cites to no statutory provision or other legal authority which states that a foreign corporation must affirmatively plead in its complaint that it is current with its CFTA obligations or is exempt from the same to avoid dismissal under Rule 12(b)(6).

If a foreign corporation is registered under § 401(a), it is "qualified to do business" and required to pay a franchise tax. *Standex Co. v. John*, 27 V.I. 157, 159 (V.I. Terr. 1992) (the "qualified to do business" language in CFTA's section 531 "obviously derives" from the filing requirements in 13 V.I.C. § 401); *see also Inland Northwest Health Servs. v. Gov't of the Virgin Islands*, No. SX-16-cv-24, 2016 WL 9454135, at *2 (V.I. Super. June 22, 2016) (compliance with 13 V.I.C. § 401(a) is required in order for a company to be "qualified to do business" under CFTA). Plaintiff does not dispute that it is not registered under § 401(a) as a foreign corporation and is, therefore, not "qualified to do business" under CFTA. (Dkt. No. 27 at 7-10).

Even if a corporation is not registered under §401(a), it can be "deemed to be doing business" in the Virgin Islands, thus triggering CFTA obligations. CFTA states that a foreign corporation is "deemed to be doing business" in the Virgin Islands, "if it maintains an office in the United States Virgin Islands." 13 V.I.C. § 530(b). Plaintiff avers that it maintains no offices in the Territory and, therefore, it cannot be "deemed" to be doing business here under the statutory language. (Dkt. Nos. 27 at 10; 27-1). Plaintiff has therefore raised a genuine issue of material fact as to this issue.

Further, the Court must consider whether Plaintiff it is actually "doing business" in the Virgin Islands for purposes of CFTA. Under CFTA, an unregistered foreign corporation may be found to be "doing business" if the corporation conducts "a substantial part of the company's ordinary or customary business" in the Virgin Islands. *See Inland Northwest Health Service*, 2016 WL 9454135, at *3 (Washington corporation with no offices or personnel in the Virgin Islands is not "doing business" based on its one contract with a Virgin Islands hospital); *M & T Mortg. Corp. v. White-Hamilton*, 49 F. Supp. 2d 802, 803 (D.V.I. 1999) (assignee of mortgage on Virgin Islands property was not "doing business" under CFTA when it had no offices here and held only a limited

number of mortgages on Virgin Islands property); *American Fidelity Fire Ins. Co. v. Construcciones Werl, Inc*., 407 F. Supp. 164, 188 (D.V.I. 1975) (New York surety's issuance of performance bond on construction projects in the Virgin Islands not sufficient to trigger CFTA because the bonds were not a "substantial part of its ordinary or customary business.")

In his Reply, Boswell relies on *Financial Trust Co. v CitiBank, N.A.*, 268 F. Supp. 2d 561 (D.V.I. 2003) to support his claim that Plaintiff is "doing business" in the Virgin Islands. (Dkt. No. 34 at 16). The *Financial Trust Co*. case, however, is inapposite because it focuses on whether Defendant Citibank had sufficient minimum contacts with the Virgin Islands to support personal jurisdiction in this Court. *Id.* at 566. Bowell cites to no authority for the proposition that the legal standard for "transacting any business" under the Virgin Islands Long-Arm Statute equates with "doing business" under CFTA. Indeed, the case law indicates that the legal standards are not the same.[10]

More directly on point is *M & T Mortgage Corp. v. White*, 49 F. Supp. 2d at 803, where another judge of this Court denied a motion to dismiss a mortgage foreclosure case based on that defendant's similar CFTA argument. In *M & T Mortgage*, the Court found that the plaintiff had "no local representatives, offices, or agents located in the Virgin Islands" and that it serviced only 34 mortgages in the Virgin Islands out of thousands of mortgages serviced nationwide. *Id.* Similarly here, Plaintiff has presented evidence that out of over 5,000 business loans made by

---

[10] In *Financial Trust Co*., the Court found that under the Virgin Islands Long-Arm Statute, 5 V.I.C. § 4903, the statutory requirement that a defendant "transact any business" could be satisfied by a single act of soliciting Plaintiffs in the Virgin Islands. This "single act" personal jurisdiction standard stands in sharp contrast to CFTA's requirement that the foreign corporation conduct a "substantial part of its business" to be found to be "doing business" in the Virgin Islands. *See Inland Northwest Health Service*, 2016 WL 9454135, at *3; *M & T Mortgage Corp.*, 49 F. Supp. 2d at 803; *American Fidelity Fire Ins. Co.* 407 F. Supp. at 188.

Plaintiff, only 7 of those loans involved borrowers in the Virgin Islands. (Dkt. No. 27-1 at 2-3). Thus, based on the current record before the Court, Plaintiff has raised a genuine issue of material fact as to whether it conducts a "substantial part" of its business in the Virgin Islands.

In short, Plaintiff maintains that it is neither "doing business" nor "deemed to be doing business" in the Virgin Islands. As a result, it asserts that it is not required to register with the Virgin Islands Government under 13 V.I.C. § 401(a). Because of its limited operations in the Virgin Islands, Plaintiff maintains that it is not subject to CFTA's requirements. (Dkt. No. 27 at 7-10).

In view of the foregoing, Boswell has failed to establish, as a matter of law, that CFTA applies to Plaintiff and that Plaintiff is therefore required to pay taxes under CFTA. Accordingly, Boswell's arguments under this statute must fail.

### 3.    Banking Statutes

Boswell also asserts that Plaintiff is operating in violation of Virgin Islands banking statutes designed to regulate certain banking operations in the Territory. Specifically, he claims that Plaintiff's action in obtaining the loan documents and filing suit in this Court violates 9 V.I.C. § 101. That statute provides, in relevant part:

> Upon compliance with the provisions of this chapter, any banking corporation organized under the laws of any other territory or state or of any foreign country, which operates a bank and does business at the place of its incorporation, may do business *and* establish offices in the United States Virgin Islands, *provided that*, before beginning its operations in the United States Virgin Islands, it files in the Office of the Lieutenant Governor a duly authenticated copy of its charter or articles of incorporation [and other documents].

9 V.I.C. § 101(a) (emphasis added). Again, Boswell has failed to establish Plaintiff has violated this statute as a matter of law.

As noted earlier, Plaintiff has presented evidence through Robbins' Declaration asserting that Plaintiff maintains no offices or agents in the Virgin Islands. In addition, the banking statute—like CFTA—does not have an independent definition of "doing business" for purposes of licensing with the Banking Board. Thus, like CFTA, it is appropriate to look to the general corporate code's definition of "doing business."[11] As the Court previously concluded, Boswell has failed to establish that Plaintiff's activities fall within that definition as a matter of law.

In sum, Boswell has failed to establish as a matter of law that Plaintiff is obligated to register with the Banking Commission as a foreign bank under 9 V.I.C. § 101. Accordingly, Boswell's Motion will be denied on the present record.

### C.     SBA as a Necessary Party

As an additional basis for dismissal, Boswell asserts that under Virgin Islands law, junior lienholders and other parties obligated on a mortgage debt must be made defendants under 28 V.I.C. § 532. He argues that the Complaint is insufficient because Plaintiff failed to identify SBA's interest or to affirmatively allege that the mortgaged real property had no other lienholders. *Id.* at 14. The mortgage lien statute, however, only requires that any party having a lien on the real estate or who is obligated on the underlying debt be named as a party. Nothing in the statute requires a plaintiff in a mortgage foreclosure action to affirmatively allege that there are *no additional lienholders or debtors* other than those named in the action. Consequently, this argument is unpersuasive.

---

[11] "'[S]tatutory text is to be interpreted to give consistent and harmonious effect to each of its provisions.'" *Heyliger v. People*, 66 V.I. 340, 354 (V.I. 2017) (quoting *United States v. Barnes*, 295 F.3d 1354, 1364 (D.C. Cir. 2002) (internal quotation marks omitted)).

In a similar vein, Boswell also asserts that Plaintiff has failed to join the SBA to the action, and that the SBA is an indispensable party under Rule 12(b)(7) and Rule 19 of the Federal Rules of Civil Procedure. (Dkt. No. 24 at 13-14). The party moving to dismiss a Complaint under Rule 12(b)(7) "bears the burden of showing why an absent party should be joined under Rule 19." *Bus Air,* 2019 WL 6329046, at *19 (citing *Disabled in Action of Pa. v. Se. Pa. Transp. Auth.*, 635 F.3d 87, 97 (3d Cir. 2011)).

In his original Motion, Boswell simply argues that the SBA is a necessary party because all of the loan documents are on SBA forms; the documents bear an SBA loan number; and Plaintiff fails to assert that the SBA is *not* the current holder of the Note. (Dkt. No. 24 at 2, 13-14). However, until the conditions of 13 C.F.R. §120.520—identifying when SBA is required to purchase SBA-guaranteed loans from Lenders—are met, the SBA only has, at most, a type of contingent interest in the Note. *See U.S. Bank, NA v. Chandan, LLC,* No. 5:12-cv-05770, 2014 WL 6390317, at *4 (S.D. W.Va. Nov. 17, 2014) (SBA's interest relating to Note does not make it a necessary party).

As noted above, however, Plaintiff recently filed—as directed by the Court—a status update of the Princess Mill bankruptcy proceeding. (Dkt. No. 65). In that filing, Plaintiff indicates that since the closing of the bankruptcy action in October 2020, the SBA has paid its guarantee to Plaintiff and is subrogated to Plaintiff's rights against the guarantors at this time. *Id.* at 2-3. As a result of this change, the SBA must now become a party to the action in order for the claims against the guarantors to proceed. Accordingly, Plaintiff and/or the SBA will be given 60 days from the date of the accompanying Order to file a Motion to Substitute or otherwise join SBA in the action as a Plaintiff pursuant to FED. R. CIV. P. 25(c).

### D.      Other Alleged "Deficiencies" in the Complaint

Boswell makes several other arguments to support dismissal of the Complaint. First, Boswell argues that the Complaint is deficient because Plaintiff failed to allege that it complied with a condition precedent to enforcing the guarantee agreement against him, *i.e.,* that it gave him written demand to pay the debt. Second, Boswell argues that Plaintiff has failed to properly plead a claim against him because under Virgin Islands law, loan guaranty claims are treated as contract claims. *Freund v. Liburd*, No. ST-11-cv-730, 2016 WL 3752986, at *10, n.57 (V.I. Super. July 7, 2016) (claims for breach of guaranty agreements are governed by general contract principles). (Dkt. No. 24 at 2-3, 12-13).

To successfully plead a claim for breach of contract, a plaintiff must prove: (1) the existence of a contract; (2) a contractually created duty; (3) a breach of that duty; and (4) damages suffered due to that breach. *Chapman v. Cornwall*, 58 V.I. 431, 437 (V.I. 2013). Because Virgin Islands law does not require a plaintiff suing for breach of contract to plead satisfaction of any conditions precedent, the granting of a motion for summary judgment is not appropriate on this basis. 5A Charles Alan Wright et al., FED. PRAC. & PROC. CIV. § 1303 (3d ed.) (pleading performance of conditions precedent is required under Rule 9(c) *only* when state contract law requires a party to plead such performance as an element of the claim). Moreover, while Boswell maintains that there are conditions precedent to Plaintiff's ability to pursue the guarantors, Plaintiff cites to various provisions of the guaranty agreement, arguing that Boswell expressly waived the right of notice or demand prior to the filing of an action. (Dkt. No. 27 at 12-14).[12] It is Boswell's

---

[12] The Court notes that the parties dispute whether Boswell's Guarantee Agreement requires that a written demand be made upon the Guarantor as a condition precedent to Boswell's liability or whether the Agreement effectively waives any obligation for such a demand. (Dkt. Nos. 1-6 at ¶¶ 1, 6(B); 27 at 13). One provision of the Guarantee Agreement states that the "Guarantor waives all rights to: (1) [r]equire presentment, protest, or demand upon Borrower," and that the Guarantor

burden to establish that no genuine issue of fact exists on this issue. This he has failed to do. *United States f/u/b/o Tip Top Constr. Corp.*, 2019 WL 3716469, at *3.

Boswell also argues that there is no independent cause of action "for enforcement of a guaranty" under Virgin Islands law. However, the authority that he cites allows for a cause of action for breach of contract against guarantors. (Dkt. No. 34 at 6-7). Here, Plaintiff's Complaint sufficiently alleges that Boswell breached a contract with Plaintiff by alleging that Princess Mill promised to repay a promissory Note reflecting a loan Plaintiff made to it in July 2008; that at the same time, Boswell—a member of the LLC—unconditionally guaranteed payment of the Princess Mill loan; that Princess Mill defaulted by failing to repay the Note as it was obligated to do; and that over $2,000,000 was owed to Plaintiff by Defendants, jointly and severally. (Dkt. No. 1 at ¶¶ 6-7, 16). Thus, Plaintiff has adequately alleged factually plausible claims that Boswell has breached a contract he made to Plaintiff. *See Tutu Park, Ltd. v. Ties That Bind, Inc.*, No. ST-2012-cv-142, 2014 WL 12949519, at *2 (V.I. Super. July 28, 2014) (company and its guarantor jointly and severally liable for damages under rental and guarantee agreements for contract damages).

In another argument, Boswell asserts that the Complaint must be dismissed because it fails to establish that consideration was provided by Plaintiff in exchange for the mortgage and guarantees. (Dkt. No. 24 at 11-12). In support of this argument, Boswell asserts that there is a lack

---

waives "any notice of . . (1) Any default under the Note; (2) Presentment, dishonor, protest, or demand; . . .(4) Any action or inaction on the Note or Collateral, such as . . . nonpayment, acceleration, intent to accelerate, . . . collection activity, and incurring enforcement expenses." (Dkt. No. 1-6 at ¶¶ 6(A); 6(B)). "If a contract is unambiguous, 'the meaning of its terms is a question of law.' If, however, a contract is ambiguous and extrinsic evidence offered in support of interpretation is disputed, the meaning of the contract's terms is a question of fact." *Clairmont Investments, LLC v. Montpellier Holding Co., LLC*, No. SX-2009-cv-417, 2020 WL 2789563, at *3 (V.I. Super. May 26, 2020). Resolution of this issue must await further development of the record and briefing.

of evidence of consideration because the Mortgage and Security Agreement—at one place in one of the documents refers to July 8, 200<u>6</u>—while the rest of the references in the various documents are to July 8, 200<u>8</u> (Dkt. Nos. 1 ¶¶ 6-11; 1-8 at 2; 24 at 12). Plaintiff asserts that the incorrect date is a typographical error and that all the signatures and notary dates consistently reflect the documents were executed on the same date. (Dkt. No. 27 at 11-12).

The inconsistency in the one date in the loan documents is not enough—standing alone— to warrant summary judgment in favor of Boswell. Under Virgin Islands law, creating a valid contract requires terms to which there is a mutual assent and consideration. *Sunshine Shopping Center, Inc. v. LG Electronics Panama, S.A.*, No. 1:2015-cv-0041, 2018 WL 4558982, at *7 (D.V.I. Sept. 21, 2018). While the inconsistent date may raise questions of the timing of documents, Boswell presents no evidence that he, in fact, did not receive consideration for his Guarantee—*i.e.*, Plaintiff's promise to and advancement of a loan to Princess Mill LLC. (Dkt. No. 1 at ¶¶ 6-9). All of the documents were purportedly signed by Boswell on behalf of Princess Mill and himself as a guarantor with the same hand-written date, July 8, 2008. (Dkt. No. 1-8, at 22).

For the foregoing reasons, Boswell's motion—asserting that these statutory bars and other defenses require dismissal of Plaintiff's claims—does not establish that he is entitled to judgment as a matter of law on Plaintiff's mortgage and foreclosure action based upon the present record.

### E.    Boswell's Reply Brief

In addition to Boswell's broad attack on the Complaint in his original Motion, he adds a new argument in his Reply brief. He now asserts that a Virgin Islands statute not previously cited— 28 V.I.C. § 536—bars the joinder of the foreclosure and debt action. (Dkt. 34 at 6-7). However, Boswell cannot advance new arguments in a reply. *Matthews v. Law Enforcement Supervisor's Union*, No. 1:2014-cv-0035, 2017 WL 6601443, at *2 n.3 (D.V.I. Dec. 22, 2017) (citing *Stern v.*

*Halligan*, 158 F.3d 729, 731 n.3 (3d Cir. 1998) ("A party cannot raise issues for the first time in a reply brief.") (internal citations omitted)). A reply is intended "only to provide an opportunity to respond to the arguments raised in the response brief; it is not intended as a forum to raise new issues." *United States v. Martin*, 454 F. Supp. 2d 278, 281 n.3 (E.D. Pa. 2006). Because Boswell waited to raise this argument until his reply brief, he has waived it. *Rogers v. Smith Volkswagen, LTD*, Civ. No. 19-2567, 2020 WL 1676400, at *8 n.6 (E.D. Pa. Apr. 6, 2020).

Even if the Court were to consider this argument, it is unpersuasive. Boswell relies on 28 V.I.C. § 536, which states:

> During the pendency of an *action for the recovery of a debt* secured by any lien mentioned in section 531 of this title, an action cannot be maintained for the *foreclosure of such lien*, nor thereafter, unless judgment is given in such action that the plaintiff recover such debt or some part thereof, and any execution thereon against the property of the defendant in the judgment is returned unsatisfied in whole or in part.

28 V.I.C. § 536 (emphasis added). Boswell also relies on *Freund* for the proposition that Section 536 prohibits including a mortgage foreclosure action with an action to recover a debt. 2016 WL 3752986, at *10-11. (Dkt. No. 34 at 6-7). In making this argument, Boswell does not consider Section 536 in conjunction with 28 V.I.C. § 531(a). In fact, Boswell's broad interpretation of section 536 is inconsistent with the plain language of the earlier provision in the same Title.[13]

Section 531 states:

> (a) A lien upon real property, other than that of a judgment, whether created by mortgage or otherwise, shall be foreclosed, and the property adjudged to be sold to satisfy the debt secured thereby, by an action of an equitable nature. *In such action, in addition to the judgment of foreclosure and sale, if it appears that a promissory note or other personal obligation for the payment of the debt has been given by the mortgagor or other lien debtor, or by any other person as principal or otherwise, the court shall also adjudge a recovery of the amount of such debt against such*

---

[13] The *Freund* case does not discuss or attempt to harmonize these two statutes.

> *person or persons, as the case may be, as in the case of an ordinary judgment* for
> the recovery of money.

28 V.I.C. § 531 (emphasis added). Thus, Section 531 permits actions to enforce a mortgage lien

on real property to include claims pursuing enforcement of a note or other personal obligation for

the same debt against the mortgagor, lien debtor "or by any other person as principal or otherwise."

The Court notes that Sections 531(a) and 536—both found in the same Title of the Virgin

Islands Code—are based on the original 1921 Municipal Codes established in the Virgin Islands.

*Soly v. Warlick*, Nos. 1:1991-cv-212 and 1:1995-cv-84, 2011 WL 3625393, at *3 n.4 (D.V.I. Aug.

17, 2011) (discussing origin of the foreclosure statutes in the 1921 Codes).[14] The simplest

explanation of the inconsistent language between these two provisions is that "in 1921, courts still

recognized a distinction between actions in equity and actions at law." *In re Estate of Sewer*, 332

F. Supp. 2d 817, 826 (D.V.I. 2004) (recognizing similar law/equity division in sections of the

probate code). The 1921 foreclosure provisions have been largely adopted in the current Virgin

Islands Code without recognizing the merger of equity and legal actions into a single "civil action."

*See Gourmet Gallery Crown Bay, Inc. v. Crown Bay Marina, L.P.*, ST-2014-cv-513, 2019 WL

8883541, at *3 (V.I. Super. Nov. 5, 2019) (the Superior Court—like almost all American courts—

now exercises both equitable and legal authority). This is supported by the language in Section

531 that refers to foreclosure actions as "equitable in nature" and actions under Section 536 as

actions to "recover a debt," which is generally considered an action at law. The distinction between

equitable and legal remedies at common law derives from the division between courts of law and

---

[14] Section 531 was amended by Act No. 7346, Sess. L. 2012, p. 34 on March 7, 2012 to add
subsection (b) requiring mediation before a judgment of foreclosure could be entered. Subsection
(a) of that statute has not changed since 1921 and neither has any part of Section 536.

courts of equity in ancient England. *See Cacciamani & Rover Corp. v. Banco Popular De Puerto Rico*, 61 V.I. 247, 252 (V.I. 2014) (although the Superior Court exercises both equitable and legal authority, the division between law and equity remains meaningful to defining the remedies available in a particular action).

In *Fed. Nat'l Mortg. Ass'n v. Teel*, No. SX-13-cv-219, 2016 WL 6126471 (V.I. Super. Oct. 14, 2016), the Court recognized the inconsistency between Sections 531(a) and 536 and found the *Freund* holding unpersuasive and inconsistent with the intent of the local rules to "eliminate unjustifiable expenses and delay in civil practice." 2016 WL 6126471, *3 n.4. The Court also relied on opinions where the Virgin Islands Supreme Court had upheld concurrent judgments for debt and foreclosure without question. *Id.* at *3 n.4 (citing *Carrillo v. CitiMortgage, Inc.*, 63 V.I. 670, 674 (V.I. 2015) (Superior Court properly granted summary judgment in favor of Plaintiff on dual claims for debt and foreclosure) and *Brouillard v. DLJ Mortg. Capital, Inc.*, 63 V.I. at 792 (same)).

Simply put, interpreting section 536 as Boswell suggests would eviscerate clear language in section 531. Based on statutory construction principles and existing local court opinions addressing these statutes, the Court finds that Boswell's belated argument lacks merit.

**F.    Request for More Definite Statement**

In the alternative to dismissal, Bowell requests that the Court order Plaintiff to file a more definite statement of its claims to clarify the "defects" discussed above. (Dkt. Nos. 24 at 14-15; 34, at 18-19). "A party may move for a more definite statement of a pleading to which a responsive pleading is allowed but which is so vague or ambiguous that the party cannot reasonably prepare a response." FED. R. CIV. P. 12(e). *See, e.g., Wadhwa v. Secretary, Dep't of Veterans Affairs*, 505 F. App'x 209, 214 (3d Cir. 2012) (citations omitted) (a proper Rule 12(e) motion "'is directed to

the rare case where because of the vagueness or ambiguity of the pleading the answering party will not be able to frame a responsive pleading'").

Boswell asserts that, because of the issues discussed above, a more definite statement concerning these "deficiencies" is required before he can respond. (Dkt. No. 34 at 18-19). The Court finds this argument wholly unpersuasive. Plaintiff's Complaint clearly sets forth, in short and plain statements, the nature of the debt and foreclosure claims such that Boswell may prepare a response. Any concerns Boswell may have regarding these issues addressed herein are readily subject to discovery to confirm or disprove Plaintiff's claims. Consequently, Boswell's alternative Motion for More Definite statement will be denied.

## IV.    CONCLUSION

In view of the foregoing, Boswell's "Motion to Dismiss, or in the Alternative, for More Definite Statement" (Dkt. No. 24) will be converted to a Motion for Summary Judgment and will be denied. Further, Boswell's alternative request under FED. R. CIV. P. 12(e) for more definite statement also will be denied.

An appropriate Order accompanies this Memorandum Opinion.

Date: August 30, 2021                                      _____/s/_____
                                                           WILMA A. LEWIS
                                                           District Judge