**IN THE DISTRICT COURT OF THE VIRGIN ISLANDS**
**DIVISION OF ST. CROIX**

| | | |
|---|---|---|
| **LIVE OAK BANKING COMPANY and U.S. SMALL BUSINESS ADMINISTRATION,** | ) | |
| **Plaintiffs,** | ) | **Case No. 1:16-cv-0070** |
| **v.** | ) | |
| **PEYTON BOSWELL and STACIA A. BOSWELL A/K/A STACIA A. JUNG,** | ) | |
| **Defendants.** | ) | |

**Appearances:**

**RICHARD H. DOLLISON, ESQ.**
**LAW OFFICES OF RICHARD H. DOLLISON PC**
**ST. THOMAS, USVI**
***FOR PLAINTIFF LIVE OAK BANKING COMPANY***

**ANGELA TYSON-FLOYD, ESQ.**
**U.S. DEPARTMENT OF JUSTICE**
**ST. CROIX, USVI**
***FOR PLAINTIFF U.S. SMALL BUSINESS ADMINISTRATION***

**THOMAS DONNELLY, ESQ.**
**ANTHEIL MASLOW & MACMINN, LLP**
**DOYLESTOWN, PA**
**PAMELA L COLON**
**LAW OFFICES OF PAMELA LYNN COLON, LLC**
**ST. CROIX, USVI**
***FOR DEFENDANT PEYTON BOSWELL***

**SCOT F. MCCHAIN, ESQ.**
**MCCHAIN HAMM & ASSOCIATES**
**ST. CROIX, USVI**
***FOR DEFENDANT STACIA BOSWELL A/K/A STACIA JUNG***

**MEMORANDUM OPINION**[1]

**ROBERT A. MOLLOY, Chief Judge**

**THIS MATTER** comes before the Court on Defendant Peyton Boswell's ("Boswell") Motion to Dismiss Second Amended Complaint ("Motion to Dismiss"), filed on July 29, 2024. (Dkt. No. 154.) Defendant Stacia Boswell a/k/a Stacia Jung ("Jung") (together with Boswell, "Defendants") joins this motion. (Dkt. Nos. 155, 167.) Plaintiffs Live Oak Banking Company ("Live Oak") and the U.S. Small Business Administration (the "SBA") (together, "Plaintiffs") filed an Opposition on September 13, 2024.[2] (Dkt. Nos. 160-61.) Boswell filed a Reply on October 2, 2024. (Dkt. No. 166.)

For the reasons discussed below, the Court will deny Defendants' Motion to Dismiss.

## I. BACKGROUND

The original Complaint in this matter was filed on October 25, 2016. (Dkt. No. 1.) On August 30, 2021, Judge Wilma A. Lewis denied a motion to dismiss filed by Defendants directed at the original complaint. (Dkt. Nos. 24, 66, 67.) The First Amended Complaint ("FAC") was filed on January 3, 2022. (Dkt. No. 102.) On May 21, 2024, Judge Lewis ordered the FAC to be amended to include the SBA as a co-plaintiff and to include "relevant allegations regarding the SBA[.]" (Dkt. No. 141.) Thus, the operative complaint in this matter is the Second Amended Complaint ("SAC"), filed on June 4, 2024. (Dkt. No. 143).

The SAC recounts that, on July 8, 2008, former co-Defendant Princess Mill Properties, LLC ("Princess Mill") executed a promissory note (the "Note") with Live Oak in the principal amount of $1.88 million. (Dkt. No. 143 at 3.) To secure the Note, on the same day, Princess Mill executed a mortgage for two plots of land in the LaGrande Princess neighborhood on St. Croix, U.S. Virgin Islands. *Id.* Princess Mill also executed and delivered an "Absolute Assignment of Lessor's interest in Leases and Rents" and a Security Agreement to Live Oak. *Id.* at 3-4.

---

[1] Due to the retirement of the judge previously assigned to this case, the undersigned, exercising his authority as Chief Judge of the District Court, reassigned this case to himself on February 17, 2026.

[2] The Opposition, originally filed on September 13, 2024, was refiled on September 17, 2024. (Dkt. Nos. 160-61.)

The loan to Princess Mill for $1.88 million pursuant to the Note was made through the SBA's 7(a) loan program. *Id.* at 4. The SBA guaranteed 75% of the loan amount for a guarantee fee of $50,375 and an ongoing service fee of 0.00494% of the outstanding balance of the guaranteed amount. *Id.* The "Unconditional Guarantee" Agreements—which each Defendant separately signed—with Plaintiffs states that: the "SBA is not a co-guarantor. Guarantor's liability will continue even if [the] SBA pays Lender [Live Oak] . . . Guarantor has no right of contribution from [the] SBA." (Dkt. Nos. 154 at 7-8; 1-6 at 4; 1-7 at 4.)

In 2010, Princess Mill began requesting assistance with scheduled loan payments. (Dkt. No. 154 at 4.) Between 2010 and 2012, the Note was modified four times to provide for either interest-only payments or deferred installment payments. *Id.* at 4-5. Following these modifications, Princess Mill defaulted on the Note. *Id.* at 5. Live Oak claims that on July 31, 2016, the amount due to them under the Note in principal, interest, and late charges totaled $2,002,225.21, with interest and late charges continuing to accrue. *Id.* On October 25, 2016, Live Oak filed this action against Princess Mill, Peyton Boswell, and Stacia Boswell. *Id.* at 6.

On January 21, 2018, Princess Mill filed for bankruptcy protection. *Id.* at 6. The instant litigation was stayed pending resolution of the bankruptcy proceeding. *Id.* On June 28, 2019, the bankruptcy trustee sold the mortgaged property and all assets located on and in the mortgaged property. *Id.* As a result of the auction amount, the bankruptcy trustee disbursed a total of $1,472,434.24 in two payments to Live Oak. *Id.* Live Oak applied these payments to the amount owed to them by Princess Mill. *Id.* Live Oak claims that: (1) the amount due prior to these payments totaled $2,529,549.11; and (2) the bankruptcy trustee's payments reduced the amount due to a principal amount of "$767,275.50 plus interest" and late charges of $19,839.37. *Id.* at 6-7.

Live Oak then began pursuing the guarantors of the Note: the SBA and Defendants. *Id.* As part of this process, Live Oak "mistakenly requested the SBA take over servicing of the loan." *Id.* The SBA paid Live Oak a portion of the loan amount pursuant to the SBA's guarantee agreement under the SBA 7(a) program. *Id.* Indeed, on August 12, 2021, Live Oak filed a "Report to Court"—as requested by the Court, Dkt. No. 64—updating the Court on the conclusion of the bankruptcy process and stating that "[i]n accordance with subject loan

documents, [Live Oak] has resorted to and collected on its SBA guarantee" and "[t]he SBA is [now] subrogated to the rights of [Live Oak] against the guarantors." (Dkt. No. 65 at 2-3.) The Report also stated that Live Oak was "awaiting administrative action by the SBA to substitute as Plaintiff and to appoint counsel to prosecute this action on behalf of the SBA." *Id.* On that basis, Judge Lewis held in her August 30, 2021 Memorandum Opinion that "[a]s a result of this change, the SBA must now become a party to the action in order for the claims against the guarantors to proceed." *Live Oak Banking Co. v. Princess Mill Props., LLC*, Civil No. 2016-0070, 2021 U.S. Dist. LEXIS 163658, at *27 (D.V.I. Aug. 30, 2021), Dkt. No. 67. In an order of even date, Judge Lewis ordered Live Oak to file a motion to join or substitute the SBA as a party within 60 days. (Dkt. No. 66.)

The SAC recounts that Live Oak and the SBA then "discovered the mistake[]" of Live Oak's request to the SBA, and "determined that Live Oak [] should continue to service the loan and pursue the defendants . . . jointly and severally, as the Guarantors of the [N]ote to Princess Mill[s]." (Dkt. No. 154 at 7.) On September 24, 2021, Live Oak provided another update to the Court, stating that "[a]fter discussing the matter of substitution/joinder of the SBA," Live Oak "learned that the SBA has declined assignment of the Loan Documents from [Live Oak], has declined to undertake loan servicing, and has directed [Live Oak] to continue prosecution of the instant action in its own name and on its own behalf." (Dkt. No. 78 at 2.) On March 14, 2022, Judge Lewis again ordered that the SBA be joined as a party, expressing the concern that "in the SBA's absence, Defendants may face double exposure—namely, Plaintiff's current action and a possible action by the U.S. Treasury to collect on behalf of the SBA." (Dkt. No. 125 at 4.) The SAC includes the SBA as a co-Plaintiff, and states that the entity "in possession of the original Note dated July 8, 2008" is Live Oak. (Dkt. No. 154 at 8.)

The SAC contains two causes of action. *Id.* at 8-10. Count One is an "action for debt as to Peyton Boswell," and seeks judgment against Boswell in the amount owed pursuant to his unconditional guarantee of the amounts outstanding under the Note. *Id.* at 8-9. Count Two is an "action for debt as to Stacia [Jung]," and seeks judgment against Jung pursuant to the amount owed under her respective unconditional guarantee of the Note. *Id.* at 9-10. Defendants seek dismissal of the SAC on eight separate bases pursuant to Rule 12(b)(6) of

the Federal Rules of Civil Procedure for failure to state a claim upon which relief can be granted. (Dkt. No. 154.)

## II. LEGAL STANDARD

A complaint should be dismissed if it "fail[s] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). The Third Circuit follows the analysis set forth by the Supreme Court in *Bell Atlantic v. Twombly* and *Ashcroft v. Iqbal* when considering a Rule 12(b)(6) motion:

> Under the pleading regime established by *Twombly* and *Iqbal*, a court reviewing the sufficiency of a complaint must take three steps. First, it must take note of the elements the plaintiff must plead to state a claim. Second, it should identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth. Finally, when there are well-pleaded factual allegations, the court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

*Connelly v. Lane Construction Corp.*, 809 F.3d 780, 787 (3d Cir. 2016) (quotations omitted).

"When assessing the merits of a Rule 12(b)(6) motion, we accept as true all factual allegations in the complaint and view those facts in the light most favorable to the non-moving party." *Doe v. Univ. of the Scis.*, 961 F.3d 203, 208 (3d Cir. 2020). Further the district court must "draw all reasonable inferences" from the allegations and also construe them "in the light most favorable" to the plaintiff. *Connelly*, 809 F.3d at 791 & n.2 (3d Cir. 2016). To survive a motion to dismiss, a complaint must contain sufficient factual allegations, taken as true, to state a claim to relief that is plausible on its face. *See Nekrilov v. City of Jersey*, 45 F.4th 662, 668 (3d Cir. 2022). "A facially plausible claim is one that permits a reasonable inference that the defendant is liable for the misconduct alleged." *Univ. of the Scis.*, 961 F.3d at 208 (quotations omitted).

## III. DISCUSSION

Defendants make eight arguments as to why the allegations in Plaintiffs' SAC are deficient and should be dismissed. (Dkt. No. 154.) The Court will address these arguments in

the order presented.[3] Ultimately, none of Defendants' arguments are sufficient under the applicable legal standards, and therefore no relief can be granted on any of these eight bases.

**A. "Shotgun" Pleadings**

Defendants argue that Plaintiffs' SAC is a "shotgun"-style pleading that is "impermissible" under Rule 8(a) of the Federal Rules of Civil Procedure because it "lead[s] to confusion as to what the actual claims are." (Dkt. No. 154 at 12.) Defendants argue the Plaintiffs' SAC is a shotgun pleading because: (1) for each of the two counts, "Plaintiff realleges each and every allegation in paragraphs 1 through 45 as if fully restated herein," and (2) neither count states "which 'Plaintiff' is doing the realleging or stating a claim." *Id.* at 12-13. Plaintiffs, in turn, claim that the SAC is "not 'so confusing' to be 'virtually impossible' for each Defendant to understand that Plaintiffs are making a claim of debt against each Defendant, jointly and severally." (Dkt. No. 161 at 9.) Further, Plaintiffs argue that the SAC is not a "shotgun pleading" because: (1) Count Two "does not incorporate the specific allegations plead" in Count One, which "is the essence of a 'shotgun pleading,'" and (2) "each count contains a prayer for relief on behalf of both plaintiffs," although "the debt is owed to Live Oak, who alleges it is in possession of the original Note." *Id.*

Defendants' arguments that the SAC constitute "shotgun pleadings" border on frivolous. The cases that Defendants cite do stand for the proposition that a preceding count may not be realleged in a subsequent count. (Dkt. No. 154 at 13 (citing *Paylor v. Hartford Fire Ins. Co.*, 748 F.3d 1117, 1126 (11th Cir. 2014); *Mardenborough v. McCollum*, 2018 U.S. Dist. LEXIS 110664, at *7-8 (D.V.I. Jul. 3, 2018); *Belizaire v. Whitecap Inv. Corp.*, 2014 U.S. Dist. LEXIS 140845 at *6 (D.V.I. Oct. 3, 2014); *Cavalli v. Port of $ale, Inc.*, 2014 U.S. Dist. LEXIS

---

[3] Defendants also make a ninth argument "only to preserve the issue for any potential appeal" in light of "the Court's previous ruling on th[e] issue," namely that the SAC "fails to allege that [Live Oak] is a bank incorporated and organized under the National Bank Act," "registered as a foreign bank with the Government of the Virgin Islands Lt. Governor's Office or the Banking and Corporations Division," "obtained a mortgage lender license pursuant to 9 V.I.C. [§] 363(a)," or "paid its franchise taxes to the Government of the Virgin Islands and is in good standing in the Territory." (Dkt. No. 154 at 4.) Indeed, Judge Lewis rejected all of these arguments at length in her August 30, 2021 Memorandum Opinion in this matter. *See Live Oak Banking Co. v. Princess Mill Props., LLC*, Civil No. 2016-0070, 2021 U.S. Dist. LEXIS 163658 (D.V.I. Aug. 30, 2021). As Defendants seek "only to preserve the issue for any potential appeal," the Court will not revisit any of those decided issues at this time.

20192, at *7-8 (D.V.I. Feb. 19, 2014)). Plaintiffs did not reallege Count One in Count Two, and therefore the cases cited by Defendants have no applicability.

A shotgun pleading is "a complaint that, in each count, incorporates all the preceding paragraphs of the complaint, making it virtually impossible to know which allegations of fact are intended to support which claim(s) for relief." *Mamouzette v. Jerome*, Civil No. 2013-117, 2023 U.S. Dist. LEXIS 237798, at *11 (D.V.I. Sept. 14, 2023), *R&R adopted in part, rejected in part*, 2024 U.S. Dist. LEXIS 90073 (D.V.I. May 20, 2024). Plaintiffs claim that they are owed a debt stemming from outstanding liabilities under the Note, set forth a cause of action that each Defendant is separately and jointly liable for the debt, claim that the same set of facts regarding the Note support each cause of action, and seek relief from the Court to collect upon the debt that Plaintiffs claim they are owed. (Dkt. No. 143.) Indeed, the fact section in the SAC identifies all the facts as "common to both counts."[4] *Id.* at 3. Defendants are not "in the untenable position of having to guess at what claim is being asserted[.]" *Mamouzette*, 2023 U.S. Dist. LEXIS 237798, at *14. In sum, there is no confusion as what the claims are, that the facts support both claims, and which Defendant each claim is directed at. The SAC is not a "shotgun pleading." Accordingly, the Court will not dismiss the SAC on this basis.[5]

**B. Lack of Attachment of Supporting Documents**

Defendants argue that the SAC additionally violates Rule 8(a) because it "failed to either attach the promissory note, mortgage, mortgage modifications and guarantees upon which the claims are based or state them verbatim in the body of the pleading." (Dkt. No. 154 at 13-14.) Defendants argue that "the pleading requirements of Rule 8(a) require that the

---

[4] The Court notes that there is nothing inherently impermissible about incorporating all facts alleged in a Complaint for each count.

[5] The Court also observes that the pleadings in the SAC are wholly unlike circumstances where the Court has previously dismissed a complaint for "shotgun pleadings." *See, e.g., Stephenson v. Lovango Island Holdings, LLP*, Civil No. 2023-0001, 2024 WL 416305 at n.4 (D.V.I. Feb. 5, 2024) ("Combining several claims within one count is a form of 'shotgun' pleading that violates Fed. R. Civ. P. 8(a)."); *Williams v. Flat Cay Mgmt., LLC*, Civil No. 2022-0002, 2023 WL 2563193 (D.V.I. Mar. 17, 2023) ("Not only do Plaintiffs fail to identify the elements of the tort anywhere in the complaint and then merely recite a legal conclusion, but they also fail to allege what actions attributable to Hatchett form the basis of this claim. This is a quintessential example of shotgun pleading."); *Mamouzette*, 2023 U.S. Dist. LEXIS 237798, at *11-12 (identifying that shotgun pleadings include "situation[s] in which most of the counts contain irrelevant factual allegations and legal conclusions" or the "assert[ion] [of] multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions, or which of the defendants the claim is brought against.").

subject contract be either set forth verbatim or attached as an exhibit to the complaint." *Id.* (citing *Pierce v. Montgomery Cnty. Opportunity Bd., Inc.*, 884 F. Supp. 965, 970 (E.D. Pa. 1995); *Antoine v. Virgin Islands Port Auth*., Civil No. 2001-0063, 2008 U.S. Dist. LEXIS 145607, at *41 (D.V.I. May 14, 2008)). However, the cases cited by Defendant do not support their argument, and indeed explicitly stand for the opposite proposition. *See Antoine*, 2008 U.S. Dist. LEXIS 145607, at *41 ("[W]hile Rule 8 of the Federal Rules of a Civil Procedure does not require a plaintiff alleging breach of contract to attach the subject contract to the complaint, it does require a plaintiff to assert the existence of an express, written contract either by setting it forth verbatim in the complaint or *by pleading it according to its legal effect*." (emphasis added)); *Pierce*, 884 F. Supp. at 970 (finding breach of contract adequately alleged where the plaintiff "pleaded all the necessary elements of a breach of contract action," including alleging "the existence of a written contract, as well as its terms" and that plaintiff "complied with all conditions precedent [in the contract] and allege[d] damages [stemming from the breach]"). There is no requirement, as Defendants claim in their reply, that "when these documents are not attached, as here, they must be set forth verbatim within the allegations of the pleading," Dkt. No. 166 at 2 (citing *Pierce*, 884 at 970; *Antoine*, 2008 U.S. Dist. LEXIS 145607, at *41), because Plaintiffs may also "assert the existence of [a] contract" by "pleading it according to its legal effect." *See Antoine*, 2008 U.S. Dist. LEXIS 145607, at *41.

Plaintiffs argue that they have adequately plead the existence of a contract because they plead facts that show that "each Defendant signed an Unconditional Guarantee guaranteeing payment of all amounts borrowed and amounts of principal and interest are still due under the terms of the Note." (Dkt. No. 161 at 10.) The Court notes that Plaintiffs have indeed pleaded the existence of the Note, the mortgage and other agreements securing the Note, the SBA guarantee agreement, and the Note modifications, as well as the relevant terms of the same and state the damages resulting from breach of the relevant terms, DKT No. 143 at 3-6, and therefore finds that Plaintiffs have adequately plead the existence of a contract "by pleading it according to its legal effect." *See Pierce*, 884 F. Supp. at 970; *see also Bayview Loan Servicing, LLC v. Curran*, Civil No. 2013-CV-0006, 2018 U.S. Dist. LEXIS 202390, at *19 (D.V.I. Nov. 29, 2018) (finding that "[a]ttaching the relevant documents to the Complaint is not required" because the complaint "clearly sets forth, in short and plain

statements, the nature of the debt and foreclosure claims such that Defendants may prepare a response"). Accordingly, the Court finds that Plaintiffs did not breach Rule 8(a) when they chose to not append any supporting documentation to their SAC, and the Court will not dismiss the SAC on this basis.

Defendants further argue that failure to append these documents "prevents Mr. Boswell and the Court from being able to determine if either Plaintiff was entitled to bring the claims asserted." (Dkt. No. 154 at 14.) However, in the preceding paragraph, Defendants acknowledge that "the original and the First Amended Complaint both attached these documents." *Id.* Therefore, to the extent that Defendants appear to be making a notice argument, the Court finds that—because the identified documents are already in the record—Defendants do not lack notice of the contents of these documents, and the Court will not dismiss the SAC on this basis.

**C. Terms of the Guarantee**

Defendants also argue that the SAC is deficient because it "does not allege that either a demand was made of Mr. Boswell pursuant in compliance with the terms of the guarantee or that he waived the same." (Dkt. No. 154 at 15.) Judge Lewis previously addressed Defendants' first of these two arguments in her August 30, 2021 Memorandum Opinion in this matter:

> Boswell argues that the Complaint is deficient because Plaintiff failed to allege that it complied with a condition precedent to enforcing the guarantee agreement against him, *i.e*., that it gave him written demand to pay the debt. . . .
>
> To successfully plead a claim for breach of contract, a plaintiff must prove: (1) the existence of a contract; (2) a contractually created duty; (3) a breach of that duty; and (4) damages suffered due to that breach. Because Virgin Islands law does not require a plaintiff suing for breach of contract to plead satisfaction of any conditions precedent, the granting of a motion for summary judgment is not appropriate on this basis. Moreover, while Boswell maintains that there are conditions precedent to Plaintiff's ability to pursue the guarantors, Plaintiff cites to various provisions of the guaranty agreement, arguing that Boswell expressly waived the right of notice or demand prior to the filing of an action [and therefore no condition precedent exists].

*Live Oak Banking Co. v. Princess Mill Props., LLC*, Civil No. 2016-0070, 2021 U.S. Dist. LEXIS 163658, at *27-28 (D.V.I. Aug. 30, 2021) (citations omitted), Dkt. No. 67. The Court hereby

adopts Judge Lewis' analysis and conclusion.[6] Accordingly, the Court will not dismiss the SAC on this basis.

**D. Specification of Damages**

Defendants also argue that the SAC is deficient because it "does not specify who owes who what so as to enable Defendants to understand the claims of each Plaintiff" and that the "damages to which each Plaintiff claims to be entitled which is impossible to decipher in this pleading." (Dkt. No. 154 at 15.) Defendants cite no caselaw in support of their position. Plaintiffs, in turn, argue that they have properly alleged that "a balance is owed of principal of $767,275.60 plus accrued interest and late fees." (Dkt. No. 161 at 12.)

This Court has rejected arguments as unsupported where the moving party "provide[s] no case law in support of their position." *In re Prosser*, Civil No. 3:2013-0087, 2017 U.S. Dist. LEXIS 25167, at *85 (D.V.I. Feb. 23, 2017). Further, Plaintiff's allegation in the SAC that "[t]he principal balance of $767,275.50 plus accrued interest and late fees from May 21, 2020[,] to the present is owed to Live Oak Bank" is sufficient. (Dkt. No. 143 at 8.) Contrary to Defendants' argument, this statement does in fact identify which Plaintiff claims to be "entitled" to the outstanding balance, and sufficiently "enable[s] Defendants to understand the claims." (Dkt. No. 154 at 15.) Accordingly, the Court will not dismiss the SAC on this basis.

**E. Standing**

Defendants argue that Live Oak lacks standing to bring any cause of action because Live Oak did not sufficiently "establish current ownership of the loan." (Dkt. No. 154 at 17.) That is, Defendants argue that because the SAC alleges that Live Oak "assigned the loan to the SBA" and that "[t]here is no allegation that the SBA has assigned the loan back to [Live Oak]," accordingly, under their reading, "the SBA, not [Live Oak], is the owner of the loan" and "[a]s a non-owner of the loan, [Live Oak] lacks standing to bring this action." *Id.* In turn, Live Oak states that it has "allege[d] it is in possession of the original Note from the bankrupt

---

[6] While Judge Lewis determined in her August 30, 2021 Memorandum Opinion that Boswell's first motion to dismiss should be "converted to a Motion for Summary Judgment because of his reliance on documents outside of the pleadings," this excerpt addresses the appropriate pleading standard for breach of contract, and therefore applies to Defendants' identical arguments made again in the present Motion to Dismiss.

borrower" and "[p]ossession of the original Note grants Live Oak the right to enforce the Note." (Dkt. No. 161 at 13 (citing UCC § 3-104).)

Defendants cite no caselaw in support of their position that Plaintiffs' assertions in the SAC are insufficient to establish ownership of the Note, and, again, this Court has rejected arguments as unsupported where the moving party "provide[s] no case law in support of their position." *In re Prosser*, 2017 U.S. Dist. LEXIS 25167, at *85. Further, the standard for establishing "standing to enforce a mortgage" is that "a plaintiff must plead ownership of the mortgage in its complaint and 'have the right to make demand upon the note secured by the mortgage.'" *Wells Fargo Bank, N.A. v. MMDG L.P.*, 354 F. Supp. 3d 671, 677 (W.D. Pa. 2018). This standard is met if the plaintiff is "in possession of the note and mortgage." *Id*; *see also Live Oak Banking Co.*, 2021 U.S. Dist. LEXIS 163658, at *14 ("A Note secured by a mortgage is a negotiable instrument under Article 3 of the Uniform Commercial Code ('U.C.C.'), and the U.C.C. requires that the party seeking to enforce a negotiable instrument have physical possession of the original instrument." (citing 11A V.I.C. § 3-301)). Thus, Live Oak has sufficiently plead ownership by including a statement in the SAC that Live Oak is in possession of the Note. Accordingly, the Court will not dismiss the SAC on this basis.

**F. Allegations related to the SBA**

Defendants make several arguments regarding the SBA as a party, namely that the SAC is deficient because it does not contain any allegation: (1) containing "either by a dollar amount or a percentage, exactly how much SBA paid to [Live Oak]"; (2) "that any sum of money is due and owing to the SBA"; (3) that "Boswell guaranteed any payment to the SBA"; and (4) that "the SBA is subrogated to the rights of [Live Oak] against Mr. Boswell because of the assignment." Defendants claim that, as a result, "neither Plaintiff is entitled to judgment" because the SAC "alleges ownership by the SBA through [Live Oak]'s assignment, but fails to allege anything due and owing to the SBA as the current owner of the loan and alleged guarantee." *Id.*

Defendants mischaracterize the purpose of the SBA as a party as well as the history of the record in this matter. As discussed above, Live Oak is in possession of the Note, and therefore possesses the right to enforce the Note as the owner of the Note. The extensive procedural history that led to Judge Lewis' determination that the SBA is a proper party in

this matter was predicated on the fact that the SBA is subrogated to Live Oak's rights against Defendants. (Dkt. Nos. 65, 66, 67, 78, 125.) That cannot now somehow be contested and is not required to be included in the SAC as an allegation because it is not an element of a breach of contract claim. *See Live Oak Banking Co.*, 2021 U.S. Dist. LEXIS 163658, at *27-28 ("To successfully plead a claim for breach of contract, a plaintiff must prove: (1) the existence of a contract; (2) a contractually created duty; (3) a breach of that duty; and (4) damages suffered due to that breach.").

Further, as Plaintiffs note in their Opposition, "[u]ntil Live Oak has completed its statutory obligations to pursue all 'prudent and commercially reasonable' collection efforts, the SBA will not take any collection efforts on its own." (Dkt. No. 161 at 13.) Judge Lewis ordered the SBA be joined as a proper party to protect Defendants against the risk that, "in the SBA's absence, Defendants may face double exposure—namely, Plaintiff's current action and a possible action by the U.S. Treasury to collect on behalf of the SBA." (Dkt. No. 125 at 4.) Thus, contrary to Defendants' arguments, it is proper that the SAC does not contain any allegation that the SBA is presently seeking any relief, including any form of monetary relief. Nor is it required that Live Oak include an allegation regarding the amount that the SBA paid to Live Oak, as the sum is neither an element of a breach of contract claim, nor does it not affect the amount that Plaintiffs allege that Defendants are liable for under the Unconditional Guarantee Agreement.[7] (Dkt. Nos. 154 at 7-8; 1-6 at 4; 1-7 at 4.) Accordingly, the Court will not dismiss the SAC on any of these bases.

**G. Statute of Limitations**

Defendants claims that the SBA, in its claims in the SAC, has exceeded the six-year statute of limitations for breach of contract claims under Virgin Islands law, and therefore "any claim by the SBA must be dismissed with prejudice." (Dkt. No. 154 at 18-19.) Defendants further argue that because, under their reading, the SAC alleges the SBA to be "the current

---

[7] Plaintiffs restate this in their Opposition as well: "Payments due under the Note were unconditionally guaranteed, jointly and severally, by Defendants regardless of the contract between Live Oak and the SBA to make a commercial loan under the SBA's 7(a) program. The agreement by the SBA to insure SBA loans made by private lenders is not a 'collateral source' that can be used to reduce sums owed by the guarantor Defendants. Hence, whatever sum the SBA paid to Live Oak does not reduce the balance owed by the Defendants." (Dkt. No. 161 at 14.)

owner of the loan and alleged guarantee through [Live Oak]'s assignment of the same, the entire case must also be dismissed with prejudice." *Id.* at 19. Plaintiffs, in turn, state that under Rule 15(c)(1)(B) of the Federal Rules of Civil Procedure, an amended pleading "relates back to the date of the original pleadings" when the amendment "asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading." (Dkt. No. 161 at 14 (citing Fed. R. Civ. P. 15(c)(1)(B)).) In Plaintiff's view, the SAC "relates back" to the original Complaint because "the addition of the SBA as a plaintiff arises from the same transaction alleged in the original complaint, namely, the loan of $1,880,000 to Princess Mill Properties, LLC, which . . . was [] personally guaranteed by . . . Boswell and Jung." *Id.* at 14-15.

First, as discussed above, Live Oak is in possession of the Note. Thus, the Court rejects Defendants' argument that the entire case should be dismissed with prejudice, as it is predicated on their incorrect reading of the SAC as somehow stating that the SBA owns the Note. Second, the SAC clearly relates back to the original Complaint as the core set of facts and the causes of action related to the Note, and the debt owed pursuant to the Note, are common between the two pleadings. *See Glover v. F.D.I.C.*, 698 F.3d 139, 145-46 (3d Cir. 2012) ("[A]pplication of Rule 15(c)(1)(B) normally entails a 'search for a common core of operative facts in the two pleadings'" as "Rule 15(c) is premised on the theory that 'a party who has been notified of litigation concerning a particular occurrence has been given all the notice that statutes of limitations were intended to provide.'"). Thus, there is no statute of limitations issue with the claims brought by Plaintiffs in the SAC. Accordingly, the Court will not dismiss the SAC on this basis.

**H. Laches**

Finally, Defendants argue that the affirmative defense of laches bars "inexcusable delay[s] in pursuing a claim" under Rule 8(c) of the Federal Rules of Civil Procedure, and that a "presumption of laches arises . . . when the statute of limitations has run." (Dkt. No. 154 at 19-20.) Defendants argue that Live Oak "refused to join the SBA as a party plaintiff or substitute it as the sole plaintiff" and that the SBA "refused to bring forth its claims until . . . nearly eight years from the latest date of accrual of its claims on July 31, 2016[.]" (Dkt. No. 154 at 19.) Defendants argue that this represents "lack of diligence" and that they have been

prejudiced by the accrual of interest in the intervening time and the need to pay for attorney's fees and mediation fees. *Id.* at 19-20.

Live Oak argues that Defendants are not entitled to a defense of laches as it "sought to enforce its rights soon after it was abundantly clear that no other option existed after modifying the loan and deferring payments through four different loan modifications." (Dkt. No. 161 at 15.) Plaintiffs further support their position by identifying that the stay in this matter—and accompanying "delay"—was due to Princess Mill's bankruptcy proceedings. *Id.* Finally, regarding the accrual of interest, Plaintiffs argue that Defendants have not filed for bankruptcy protection, nor have Defendants paid the amounts owed under the Note and the Absolute Guarantee Agreement. *Id.*

Laches is an equitable affirmative defense that "originally served as a guide when no statute of limitations controlled the claim." *Travers v. FedEx Corp*., 567 F. Supp. 3d 542, 546 (E.D. Pa. 2021). It is "reserved for those rare cases where a protracted acquiescence by plaintiff induces a defendant to undertake substantial activities in reliance on the acquiescence." *FMC Corp. v. Control Sols., Inc*., 369 F. Supp. 2d 539, 582 (E.D. Pa. 2005). Ultimately, "[w]hether to apply the equitable doctrine of laches is left to the sound discretion of the court." *In re Am. Home Mortg. Holding*, 458 B.R. 161, 172 (Bankr. D. Del. 2011).

The Court does not find the doctrine of laches applicable to the case at hand. First, given that Live Oak filed this case within the statute of limitations—thus there can be no presumption of laches—and thus there has been no delay, much less unreasonable delay, in the filing of this case. To rule otherwise would impermissibly create an end-run around the applicable statute of limitations established by the Virgin Islands Legislature, and is at odds with the historical purpose of the equitable doctrine of laches. *See Travers*, 567 F. Supp. 3d at 546. Second, the mere accrual of interest or the need to pay attorney's fees for ongoing litigation does not constitute undue prejudice in this context, much less any prejudice caused by a delay by the Plaintiffs in the filing of this case. Plaintiffs have sought the value of the interest accruing on the Note balance since the initiation of this litigation; therefore, Plaintiffs have not shown any "protracted acquiescence" to the outstanding principal and accruing interest that could have somehow "induced" Defendants to not pay the interest accruing. *See FMC Corp.*, 369 F. Supp. 2d at 582; *see also United States v. Husbands*, Civil No. 11-0475, 2012 U.S. Dist. LEXIS 67888, at *5 (E.D.N.Y. May 15, 2012) (finding no "avenue for relief" under an equitable laches argument based on accrued

interest on a promissory note); *Writers Guild of Am. v. BTG Prods., LLC,* Civil No. 2014-05828, 2016 U.S. Dist. LEXIS 16414, at *12-13 (C.D. Cal. Feb. 9, 2016), *aff'd in part, rev'd in part on other grounds sub nom. Writers Guild of Am., W., Inc. v. BTG Prods., LLC,* 708 F. App'x 458 (9th Cir. 2018) (rejecting a laches argument based on accruing interest to be "unconvincing"); *In re St. Onge*, 317 B.R. 39, 44 (Bankr. D.N.H. 2004) (rejecting a laches arguments based on accruing interest on a mortgage even where there was an "unreasonabl[e] delay[]" in the assertion of rights to amounts due because there was no evidence that the party owing money "had sufficient funds during the past years to pay off the loan so as not to accrue interest on the note"). Similarly, the need to pay attorney's fees is a routine feature of settling a dispute through litigation in the court system, and is not a "type[] of prejudice that [can] satisfy the doctrine of laches." *See In re Advanced Elecs., Inc.*, Civil No. 2006-5323, 2009 U.S. Dist. LEXIS 147821, at *6-7 (E.D. Pa. Jan. 16, 2009) ("Laches requires prejudice that is directly linked to, or caused by, the other party's delay, e.g., the death or unavailability of witnesses, the loss or destruction of records, dimming of memories, or the adverse change of position by party asserting laches[.]"). Accordingly, the Court will not exercise its discretion to dismiss the SAC on the basis of the equitable doctrine of laches.

## IV. CONCLUSION

In view of the foregoing, the Court will deny in part Defendants' Motion to Dismiss. (Dkt. No. 154.) While Defendants provide numerous arguments as to why the Second Amended Complaint, Dkt. No. 142, should be dismissed, none of Defendants' arguments are sufficient under the applicable legal standards. Accordingly, no relief can be granted.

An appropriate Order accompanies this Memorandum Opinion.

**Dated:** September 8, 2026

*/s/ Robert A. Molloy*
**ROBERT A. MOLLOY**
**Chief Judge**